## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

TERRY HASTINGS,                           )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )    Case No. CIV-25-769-SLP
                                          )
JACKSON MECHANICAL SERVICE,               )
INC., *et al.*,                           )
                                          )
        Defendants.                       )

### O R D E R

Before the Court is the Partial Motion to Dismiss [Doc. No. 14] filed by all Defendants. Plaintiff Terry Hastings, proceeding through counsel, filed a Response [Doc. No. 15], and the Defendants filed a Reply [Doc. No. 16]. The Motion is GRANTED in part and DENIED in part.

### I.    Background[1]

In or around March 2022, Plaintiff began working for Defendant Jackson Mechanical Service, Inc. [Doc. No. 1] ¶ 7. On or about January 23, 2023, Plaintiff suffered a seizure outside of work. *Id.* ¶ 11. Plaintiff was subsequently told that he suffered from inflammation of the brain and required surgery. *Id.* ¶ 13. Plaintiff promptly notified Defendants and took leave from on or about February 28, 2023 until May 2023 (about 3 months). At the time, Defendants did not notify Plaintiff of his right to FMLA and Plaintiff

---

[1] The Court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to [Plaintiff]." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014)).

was therefore required to use short-term disability benefits to cover his leave.  *Id.* ¶ 15. Plaintiff returned to work for around eighteen (18) months, from May 2023 to November 27, 2024, before suffering from another seizure.  *Id.* ¶¶ 16-17.  At that time, Plaintiff took FMLA leave. *Id.* ¶¶ 18 & 50.  On or about December 2, 2024 Plaintiff returned to work and attempted to speak to Defendant Carrie Shirley, Jackson Mechanical's HR Manager, regarding reasonable accommodations. However, Shirley instead sent Plaintiff home with documents for his physician to complete.  *Id.* ¶ 24.  On or about December 4 or 5, 2024, Plaintiff returned his completed documents to Defendant Shirley.  These documents described Plaintiff's medical condition, noted certain accommodations, and explained that Plaintiff would be required to take intermittent leave to receive medical care and treatment. *Id.* ¶¶ 27-29.  On or about December 5, 2024, Plaintiff met with Defendants Carrie Shirley and John Birdsong in which Shirley and Birdsong fired Plaintiff stating he was a "huge liability."  *Id.* ¶¶ 30-31.

After his termination, Plaintiff filed the instant lawsuit, which includes two claims: (1) "violations of the ADA/ADAAA in the form of disability discrimination and retaliation," *id.* ¶ 37 and (2) "interference with and retaliation for Plaintiff's use of FMLA-qualifying medical leave in violation of the Family and Medical Leave Act." *id.* at ¶ 45.

The Defendants ask the Court to dismiss Count II of Plaintiff's Complaint — Plaintiff's FMLA interference claim and Plaintiff's FMLA retaliation claim for failure to state a claim, pursuant to Rule 12(b)(6).

## II.   Governing Standard

To survive a Rule 12(b)(6) motion, the plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). While a plaintiff need not establish a prima facie case to survive dismissal, *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012), he must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. "Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (citing *Iqbal*, 556 U.S. at 678). Thus, a complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## III.   Discussion

### A.   Count II – FMLA Interference

In Count II of his Complaint, Plaintiff alleges that Defendants interfered with his rights under the FMLA in two instances. First, by failing to notify Plaintiff of his FMLA rights before his first three-month leave, therefore causing him to use short-term disability benefits to cover his leave. [Doc. No. 1] ¶¶ 15 & 49. And second, by terminating him, precluding him from taking FMLA leave after his second seizure. *Id.* ¶ 49. The Defendants move the Court to dismiss this cause of action. According to the Defendants, Plaintiff "has

3

not claimed any actionable harm or prejudice from the alleged lack of notice." [Doc. No. 14] at 4. Moreover, the Defendants allege that Plaintiff's termination preventing him from taking FMLA leave, "does not support a claim for FMLA interference." *Id.* at 5. Defendants further allege that Plaintiff, "has not alleged any facts that would indicate that his termination was related in any way to his use of FMLA leave." *Id.*

To establish a prima facie case of FMLA interference, an employee must show: "(1) that [s]he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with h[er] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of h[er] FMLA rights." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012). The Tenth Circuit has held that, "an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave." *Dalpiaz v. Carbon Cnty.*, Utah, 760 F.3d 1126, 1132 (10th Cir. 2014). Further, "if the employee can demonstrate that the first two elements of interference are satisfied, the employer then bears the burden of demonstrating that the adverse decision was not 'related to the exercise or attempted exercise of [the employee's] FMLA rights.'" *Id.* at 1132.

### *Interference – Failure to Notify*

Element one is not in dispute. In fact, it appears as though the parties agree that Plaintiff was entitled to FMLA leave. Further, the Defendants do not dispute that they failed to notify Plaintiff of his right to FMLA leave. Rather, Defendants allege that despite their failure to notify Plaintiff has not claimed any actionable harm or prejudice from this failure. The Tenth Circuit has held that it is the employer's duty to notify the employee of

4

their FMLA rights and that a Plaintiff may have an FMLA interference claim based on an employer's "failure to personally notify him of his FMLA rights." *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 n.11 (10th Cir. 2001); *see also Newbold v. HealthEquity, Inc.*, No. 2:24-CV-103-DAK-JCB, 2025 WL 276364, *8 (D. Utah Jan. 23, 2025) ("If the employer is on notice that the employee might qualify for FMLA benefits, the employer has a duty to notify the employee that FMLA coverage may apply") (citations omitted). The Supreme Court has held that the FMLA "provides no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 82 (2002). As outlined in his Complaint, Plaintiff informed the Defendants of an event that could qualify him for FMLA leave, but the Defendants failed to notify Plaintiff of his FMLA rights. In his Complaint, Plaintiff alleges that he was "required to use short-term disability benefits to cover his leave" because the Defendants failed to inform him of his FMLA rights. [Doc. No. 1] ¶ 15. This is a sufficient allegation of prejudice. The Court therefore finds that Plaintiff has alleged sufficient facts to state a plausible claim for FMLA interference due to lack of notice.

### *Interference – Termination*

Defendants do not dispute that they terminated Plaintiff on December 5, 2024. Instead, Defendants allege that Plaintiff's termination does not amount to an adverse action because Plaintiff was "actively attempting to return to work at the time of his termination." [Doc. No. 14] at 4. Defendants further declare that Plaintiff has failed to allege that his termination, if taken as an adverse action, was related in any way to his use of FMLA leave. *Id.* at 5.

To prove an adverse action arose, an employee must show that he was "prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014).  While an employee must notify their employer of their request to go on leave, the FMLA "does not require a covered employee to specifically ask for FMLA benefits," and the employee "need not expressly assert rights under the FMLA or even mention the FMLA." *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir. 2001) (citing 29 C.F.R. §§ 825.302(c), 825.303(b)).  Rather, "[i]f the employer is on notice that the employee might qualify for FMLA benefits, the employer has a duty to notify the employee that FMLA coverage may apply." *Id.*  The Eleventh Circuit has held that because of the notice requirement of the FMLA, eligible employees are protected once they give notice to their employer of a potential triggering event.  *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1274 (11th Cir. 2012) ("We hold that because the FMLA requires notice in advance of future leave, employees are protected from interference prior to the occurrence of a triggering event. . .").

In his Complaint, Plaintiff alleges that he returned to work on or about December 2, 2024, to discuss reasonable accommodations with the Defendants.  [Doc. No. 1] ¶ 23.  However, Plaintiff and the Defendants did not discuss reasonable accommodations.  Instead, Plaintiff was sent home with medical documents for his physician to complete regarding his condition.  *Id.* ¶ 24.  Plaintiff returned the medical documents to the Defendants on or around December 4 or 5, 2024.  *Id.* ¶ 26.  As alleged in Plaintiff's Complaint, the medical documentation given to the Defendants confirmed that Plaintiff

suffered from a seizure disorder and informed Defendants that Plaintiff would be "required to take intermittent leave to receive medical care and treatment." [Doc. No. 1] ¶¶ 26-28. By providing Defendants with this medical documentation, Plaintiff put the Defendants on notice that he would need to take FMLA leave in the future.  And while the Tenth Circuit has not yet ruled on the issue of whether employees who have disclosed their intention to take leave are protected from interference with their FMLA rights, this Court is persuaded by the approach of the Eleventh Circuit and holds that an FMLA eligible employee who notifies their employer of their intention to take FMLA leave, but has not yet taken FMLA leave, is protected from interference with those FMLA rights.  *Pereda*, 666 F.3d at 1274; *see also Romero-Valdez v. Parnall L. Firm, LLC*, No. 1:23-CV-01084-LF-GJF, 2025 WL 3687793 (D.N.M. Dec. 19, 2025) (holding that when an employee is terminated before they become eligible for FMLA leave, but after they notify their employer of their intention to take leave, the first element of FMLA interference has been met).  In the present case, Plaintiff's termination does give rise to an adverse action as Plaintiff had just notified the Defendants of his intent to take future leave.

"Timing can be particularly suggestive in determining whether termination relates to the exercise of FMLA rights" when establishing the third element of an FMLA interference claim. *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1227 (10th Cir. 2012). Plaintiff was terminated the day after (or the same day) he notified Defendants of his intent to take future leave.  [Doc. No. 1] ¶¶ 30-31.  This fact, along with the fact that Defendant has provided no evidence to suggest an alternative reason for termination, is enough to prove the third element of an interference claim.  *Brown*, 700 F.3d at 1227.  Accepting the

Complaint's allegations as true and construing them in the light most favorable to Plaintiff, the Court concludes Plaintiff has stated a plausible claim of FMLA interference.

**B.    Count II – FMLA Retaliation**

A retaliation claim requires that the plaintiff make a prima facie showing that: (1) the plaintiff engaged in protected activity; (2) the defendant took action that a reasonable employer would consider adverse; and (3) a causal connection exists between the protected activity and the adverse action. *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006). A retaliation claim may be brought "when an employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work." In *Wehrley v. Am. Fam. Mut. Ins. Co.*, the Tenth Circuit held that while one must "actually be eligible" for FMLA leave to bring a retaliation claim, a Plaintiff must not actually take FMLA leave to bring a retaliation claim. 513 F. App'x 733, 742 (10th Cir. 2013) ("We reject this absurd result and hold that giving an employer notice of intent to take FMLA leave, at least where the employee qualifies for that leave, is protected activity for purposes of an FMLA retaliation.").

In his Complaint, Plaintiff alleges that "Defendants . . . retaliated against Plaintiff for his use of FMLA-qualifying medical leave . . ." [Doc. No. 1] ¶ 50. Defendants contend that Plaintiff has "not pled any facts that would draw a casual connection between his 2023 leave and his December 2024 termination." [Doc. No. 14] at 6. Defendants further contend that following Plaintiff's November 27, 2024 seizure, Plaintiff never returned to work and therefore he cannot state a claim for retaliation. *Id.* at 9.

*Retaliation – February 2023 to May 2023 Leave*

The Court agrees with the Defendants that Plaintiff has not established that a causal connection exists between his February 2023 to May 2023 leave and the adverse action (Plaintiff's termination).   Plaintiff came back from leave in May 2023, but was not terminated until November 2024, eighteen (18) months after his return.   And while close temporal proximity between an FMLA leave request and a termination suffices to establish a case of retaliation, eighteen (18) months is far too detached.  *Metzler*, 464 F.3d 1171-72 (10th Cir. 2006); *see also Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1191 (10th Cir. 2016) (explaining prior case law to be that temporal proximity of something less than three months is enough to establish a retaliation claim). The Court therefore finds that Plaintiff has not alleged sufficient facts to state a plausible claim for FMLA retaliation as it relates to his February 2023 to May 2023 leave.

*Retaliation – November 2024 Leave*

Plaintiff does however establish a claim for FMLA retaliation as it relates to his November 27, 2024 leave.  Taking the allegations alleged in Plaintiff's Complaint as true, on November 27, 2024, Plaintiff suffered a seizure and therefore took FMLA leave.  [Doc. No. 1] ¶¶ 17-18.  Plaintiff returned to work on December 2, 2024, but was subsequently sent home and told to take "Paid Time Off" (PTO) by Defendant Shirley. *Id.* ¶¶ 23-25. Plaintiff again returned to work on December 5, 2024, and was fired the same day. *Id.* ¶ 30. Plaintiff has established that he engaged in protected activity, his employer took adverse action by terminating him, and there is a casual connection between his protected activity and the adverse action as the termination took place mere days after Plaintiff took leave.

Defendants' allegation that Plaintiff "did not return to work" following his leave and therefore cannot assert a claim for retaliation fails.  Plaintiff did return to work on December 2, 2024 (and again on December 5, 2024).  And the fact that the Defendants sent Plaintiff home on PTO on December 2, 2024 before firing him on December 5, 2024 does not change that fact.  The Court therefore finds that Plaintiff has alleged sufficient facts to state a plausible claim for FMLA retaliation as it relates to his November 27, 2024 leave.

## IV.    Conclusion

For the reasons set forth, the Defendant's Partial Motion to Dismiss [Doc. No. 14] is GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 24th day of July, 2026.

**SCOTT L. PALK**
**CHIEF UNITED STATES DISTRICT JUDGE**